673 So.2d 3 (1996)
Richard MARCOLINI, Petitioner,
v.
STATE of Florida, Respondent.
Mercedes ACOSTA, Petitioner,
v.
STATE of Florida, Respondent.
Nos. 85225, 85226.
Supreme Court of Florida.
January 18, 1996.
Clarification Denied April 25, 1996.
*4 Richard L. Jorandby, Public Defender and Anthony Cavello, Assistant Public Defender, West Palm Beach, for Petitioners.
Robert A. Butterworth, Attorney General; Joan Fowler, Bureau Chief, Senior Assistant Attorney General and Myra J. Fried and Michelle A. Konig, Assistant Attorneys General, West Palm Beach, for Respondent.
Robert E. Stone, Miami, amicus curiae for Florida Power & Light Company.
WELLS, Justice.
We have for review State v. Marcolini, 664 So.2d 963 (Fla. 4th DCA 1995), and State v. Acosta, 664 So.2d 967 (Fla. 4th DCA 1995), based on apparent conflict with MacMillan v. State, 358 So.2d 547 (Fla.1978). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Marcolini was charged with theft of electricity in violation of section 812.14, Florida Statutes (1991), as a result of the discovery of a wire having been inserted in a hole drilled in his electric meter. According to section 812.14(3), Marcolini's actions may constitute prima facie evidence of a violation of that statute. Section 812.14(3) provides:
(3) The presence on property in the actual possession of a person of any device or alteration which effects the diversion or use of the services of a utility, cable television service, or community antenna line service so as to avoid the registration of such use by or on a meter installed by the utility or so as to otherwise avoid the reporting of use of such service for payment shall be prima facie evidence of the violation of this section by such person; however, this presumption shall not apply unless:
(a) The presence of such a device or alteration can be attributed only to a deliberate act in furtherance of an intent to avoid payment for utility services;
(b) The person charged has received the direct benefit of the reduction of the cost of such utility services; and
(c) The customer or recipient of the utility services has received the direct benefit of such utility service for at least one full billing cycle.
Marcolini filed a pretrial motion to declare unconstitutional the presumption created by section 812.14(3). After a hearing on the motion, the court found that the statute shifted the burden of proof to the defendant once the State proved the presence of a device which effected the diversion or use of utility services and thus created an unconstitutional mandatory rebuttable presumption. A mandatory rebuttable presumption requires the trier of fact to presume an element of a crime upon proof of a basic or evidentiary fact unless the defendant comes forward with evidence to rebut the finding of that element. Francis v. Franklin, 471 U.S. 307, 314 n. 2, 105 S.Ct. 1965, 1971 n. 2, 85 L.Ed.2d 344 (1985); Sandstrom v. Montana, 442 U.S. 510, 517, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39 (1979); County Court of Ulster County, N.Y. v. Allen, 442 U.S. 140, 157, 99 S.Ct. 2213, 2225, 60 L.Ed.2d 777 (1979). Such a presumption violates a defendant's due process rights by relieving the State of the burden of persuasion. Francis, 471 U.S. at 317, 105 S.Ct. at 1972-73. The trial court dismissed the case and, pursuant to Florida Rule of Appellate Procedure 9.030(b)(4)(B), certified the issue to the Fourth District Court of Appeal as one of great public importance.
The Fourth District reversed the trial court's dismissal.[1] The court questioned whether under the facial analysis used by this Court in MacMillan,[2] the 1979 amendments *5 to section 812.14(3) made the current version of this provision constitutional. Marcolini, 664 So.2d at 964. The court concluded however, pursuant to recent case law from this Court and the United States Supreme Court,[3] that the trial court erred in determining the constitutionality of the statute facially rather than as applied because the statute created a permissive inference[4] as opposed to a mandatory rebuttable presumption. Id. A permissive inference allows, but does not require, the trier of fact to infer an elemental fact upon proof of a basic fact and places no burden on the defendant. Allen, 442 U.S. at 157, 99 S.Ct. at 2224. The district court classified the presumption created by section 812.14(3) as permissive based on the fact that it contained the words "shall be prima facie evidence," as did the statute labeled a permissive inference in State v. Rolle, 560 So.2d 1154, cert. denied, 498 U.S. 867, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990). Marcolini, 664 So.2d at 966. We agree with the district court that the statute creates a permissive inference and that the constitutionality of the statute must therefore be determined as applied rather than facially.
For a permissive inference to withstand constitutional challenge in an as-applied analysis, a rational connection must exist between the facts in the record and the ultimate fact to be presumed. Allen, 442 U.S. at 165, 99 S.Ct. at 2228. Although this case did not proceed to trial, the district court applied the rational connection test to the permissive inference in light of the facts in the record at the time of the motion and concluded:
In Allen, ... the New York statute provided that the presence of a firearm in an automobile was "presumptive evidence of its possession by all persons occupying such automobile." The Supreme Court, after considering all of the facts, held the provision constitutional as applied to three occupants of an automobile, where two handguns were in an open handbag of a fourth occupant and were visible to the officer who had stopped the vehicle for speeding. If the New York statute in Allen passes the rational connection test, then the Florida statute, as applied to the facts in this case so far as we know them, also passes the rational connection test. In our opinion the odds are just as good that the defendant in the present case is the culprit as the odds were that all of the occupants of the vehicle in Allen were in possession of the handguns in the open handbag of one of the occupants.
In addition to Allen, State v. Ferrari, 398 So.2d 804 (Fla.1981), also supports our conclusion that the present inference passes the rational connection test. In Ferrari, the supreme court held that a statutory provision which made it "prima facie evidence" of criminal fraud for a contractor to use a payment made by the owner for any purpose other than paying for the labor or services performed on the owner's property passed the rational connection test.
*6 Marcolini, 664 So.2d at 966. The court acknowledged that a final determination of the statute's constitutionality should be made in light of the facts as presented at trial. Id. at 967.
We agree with the district court that the current version of the statute as applied to the limited facts presented in this case passes the rational connection test. In order for the permissive inference in section 812.14(3) to pass the rational connection test, the record must disclose that the presumed fact, that Marcolini and Acosta violated section 812.14, "more likely than not" flows from the following facts which the state must prove: (1) a device or alteration of equipment allowing for use of a utility service without payment was present on property in the actual possession of the defendant; (2) the presence of the device or alteration was the result of a deliberate act in furtherance of an intent to avoid payment for utility services; (3) the defendant received the direct benefit of the reduction in cost of the utility services effected by the device or alteration; and (4) the customer received the direct benefit of such utility service for at least one full billing cycle. We find that a defendant is more likely than not in violation of the statute when a fact finder concludes that each of these facts has been proven by the State.
We conclude that the amendments made to section 812.14(3) following MacMillan bolster the statute's constitutionality in this as-applied analysis. Prior to the amendments, the fact of intent to violate and thus violation was presumed upon a showing of proof that the property on which the diversion occurred was in the actual possession of the accused or upon proof that the accused received the direct benefit from a utility. MacMillan, 358 So.2d at 549. The current version of the statute requires that the element of intent to violate be proven rather than presumed. This requirement and the additional facts the State must now prove eliminate the possibility, which existed under the old statute, that a person will be charged with violation of the statute as a result of action taken by a prankster, angry neighbor, or vandal.
We emphasize that our analysis of the statute is limited to the bare-bone facts upon which the district court based its analysis. A complete analysis must still be made in light of the facts presented at trial and the jury instruction on the statutory presumption. Jury instructions play an integral role in the final determination of whether that presumption is mandatory or permissive.[5] Thus, if the trial judge on remand determines that the statute passes the rational connection test the judge must instruct the jury as to the application of the statute in accord with the requirements set forth in Rolle, 560 So.2d at 1156, and Wilhelm v. State, 568 So.2d 1, 3 (Fla.1990) (quoting Boyde v. California, 494 U.S. 370, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990)). As these cases indicate, the jury instructions must not shift to the defendant the burden of persuasion on an element of the offense charged.
Finally, we address what the district court considered to be conflict between this case and MacMillan. The district court stated that its decision conflicted with MacMillan but determined that this Court had reconciled the conflict by impliedly overruling MacMillan in Ferrari[6] and Rolle. Marcolini, *7 664 So.2d at 967. We agree that the conflict has been reconciled but reach that conclusion for the following reason. Because facial review is no longer applicable to the permissive inference in this case, we find that MacMillan, which used a facial analysis in reviewing the prior version of section 812.14(3), is distinguishable. Additionally, we note that the 1979 amendments to section 812.14(3) provide a basis on which to distinguish MacMillan from the instant case. Although we resolve the apparent conflict by distinguishing MacMillan, we approve the district court's decision in all other respects and remand to the trial court for further proceedings.
It is so ordered.
GRIMES, C.J., and OVERTON and HARDING, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which SHAW and KOGAN, JJ., concur.
ANSTEAD, Justice, dissenting.
The district court opinion on review candidly noted: "[W]e are not persuaded that the changes made by the legislature would make the provision constitutional under the analysis used by the MacMillan court...." Marcolini, 664 So.2d at 964. Further, the court acknowledged "that we are creating conflict with MacMillan." Id. at 967. Because I believe our decision in MacMillan v. State, 358 So.2d 547 (Fla.1978), was correctly decided and I find the changes in the relevant statute to be insufficient to cure the constitutional defect we found in MacMillan, I would also hold the present statute unconstitutional.[7]
In effect, section 812.14, Florida Statutes (1993), creates a presumption that a homeowner is guilty of stealing utility services if his utility meter has been altered in some way to avoid recording the use of the services. In MacMillan we held:
Sub judice, we need not consider whether the subject statutorily created presumption meets the reasonable doubt standard since we agree with appellant that it does not satisfy the rational connection standard. Under the challenged statute, the presumed fact of intent to violate and of violation comes into play merely upon proof that the property wherein diversion of some sort has occurred is in the actual possession of the accused or upon proof that the accused has received direct benefit from a utility. We find that it cannot be said with substantial assurance that the presumed fact that defendant is guilty of violation of Section 812.14, Florida Statutes (Supp.1976), is more likely than not to flow from the proved fact of possession of the premises or receipt of benefits. One in actual possession of property or one receiving direct benefits would not more likely than not be the guilty person. Such an inference is irrational and arbitrary. Common experience tells us that the device or apparatus tampered with or altered is generally on the outside of a building and accessible to anyone; that the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service are commonly derived by any occupant of the premises, including family members, business partners, associates, employees and others; and that the billing which would constitute notice of possible alteration is done no more frequently than monthly. Furthermore, there are many ways to make an alteration which are so simple in nature that a prankster, a vandal or an angry neighbor could utilize them to cause the one in possession of the premises to receive benefits therefrom without his *8 knowledge and, thereby, subject him to the presumption.
358 So.2d at 549-50. In essence, the statute before us today is the same statute we considered in 1978, and I find our observations to be just as valid today as they were in 1978. Further, not only does the amended statute continue to use the mandatory language: "shall be prima facie evidence of the violation of this section [by the person in possession of the property]," it also uses the phrase "this presumption" to refer to its effect. There can be no doubt that the statute was intended to create a presumption.
While the circumstances set out in the statute may constitute circumstantial evidence of a violation of the statute, they are not sufficient to create what amounts to a presumption of guilt that then must be overcome by the homeowner. In Francis v. Franklin, 471 U.S. 307, 317, 105 S.Ct. 1965, 1973, 85 L.Ed.2d 344 (1985), the United States Supreme Court condemned the use of such presumptions, whether they are contained in statutes or jury instructions:
"Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." Patterson v. New York, [432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977).] In Mullaney v. Wilbur, [421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)] we explicitly held unconstitutional a mandatory rebuttable presumption that shifted to the defendant a burden of persuasion on the question of intent. And in Sandstrom [v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)] we similarly held that instructions that might reasonably have been understood by the jury as creating a mandatory rebuttable presumption were unconstitutional.
SHAW and KOGAN, JJ., concur.
NOTES
[1] The Fourth District also reversed a similar dismissal in the companion case State v. Acosta, 664 So.2d 967 (Fla. 4th DCA 1995).
[2] In MacMillan we held unconstitutional the presumption created by the 1976 version of section 812.14(3) which provided:

(3) The existence, on property in the actual possession of the accused, of any connection, wire, conductor, meter alteration, or any device whatsoever, which effects the diversion or use of the service of a utility or a cable television service or community antenna line service or the use of electricity, gas, or water without the same being reported for payment as to service or measured or registered by or on a meter installed or provided by the utility shall be prima facie evidence of intent to violate, and of the violation of, this section by such accused. The use or receipt of the direct benefits from the use of electricity, gas, water, heat, oil, sewer service, telephone service, telegraph service, radio service, communication service, television service, or television community antenna line service derived from any tampering, altering, or injury of any connection, wire, conductor, device, altered meter, pipe, conduit, line, cable, transformer, amplifier, or other apparatus or device shall be prima facie evidence of intent to violate, and of the violation of, this section by the person or persons so using or receiving such direct benefits.
§ 812.14, Fla.Stat. (Supp.1976).
[3] Specifically, the court relied on Allen, 442 U.S. 140, 99 S.Ct. 2213, State v. Rolle, 560 So.2d 1154 (Fla.), cert. denied, 498 U.S. 867, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990), and State v. Ferrari, 398 So.2d 804 (Fla.1981).
[4] The United States Supreme Court now uses the term "permissive inference" rather than "permissive presumption" when referring to a permissive provision. See Francis, 471 U.S. at 314-15, 105 S.Ct. at 1971. We use the same terminology here.
[5] See Allen, 442 U.S. at 160-63, 99 S.Ct. at 2226-27; Wilhelm v. State, 568 So.2d 1 (Fla.1990); Rolle, 560 So.2d 1154; see also Charles W. Ehrhardt, Florida Evidence § 301.2 (1995 ed.).
[6] We recognize that the statutory presumption addressed in Ferrari was held unconstitutional in Miller v. Norvell, 775 F.2d 1572 (11th Cir.1985), cert. denied, 476 U.S. 1126, 106 S.Ct. 1995, 90 L.Ed.2d 675 (1986), but find that our decision in Ferrari holding section 713.34(3), Florida Statutes (1979) constitutional remains good law. See Wilhelm 568 So.2d at 3 (citing Sandstrom, 442 U.S. at 516, 99 S.Ct. at 2455, for the proposition that a state's supreme court is the final interpreter of state statutory language but it is not the final authority on the interpretation which a jury could have given an instruction). Consequently, we disapprove the decision in State v. Falcon, 556 So.2d 762 (Fla. 2d DCA 1990), which, contrary to Ferrari, held that section 713.34(3), Florida Statutes (1985), created an unconstitutional mandatory presumption. In Falcon the court questioned the validity of Ferrari based on Rolle v. State, 528 So.2d 1208 (Fla. 4th DCA 1988), and Frazier v. State, 530 So.2d 986 (Fla. 1st DCA 1988), which both held section 316.1934(2)(c) and its corresponding jury instruction unconstitutional. We subsequently quashed the district court decisions in Frazier and Rolle with respect to that holding. See State v. Rolle, 560 So.2d 1154 (Fla.), cert. denied, 498 U.S. 867, 111 S.Ct. 181, 112 L.Ed.2d 144 (1990); Frazier v. State, 559 So.2d 1121 (Fla.), cert. denied, 498 U.S. 834, 111 S.Ct. 102, 112 L.Ed.2d 73 (1990).
[7] I fail to see how jury instructions should play a role in our determination of whether this statutorily-created presumption passes constitutional muster. We must evaluate the statute as if it were read to a jury. We cannot save the statute by acknowledging its flaw and then suggesting that the jury be instructed that it means something different than it says. If it's flawed, it's flawed. Of course, if the flaw is repeated in jury instructions, then the instructions themselves are also subject to constitutional attack.